UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AYE AYE THEIN, *et al.*,<br><br>        *Plaintiffs*,<br><br>   v.<br><br>DONALD J. TRUMP, President of the United States, *et al.*,<br><br>        *Defendants*. | Civil Action No. 25-2369 (SLS)<br><br>Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

In late July 2025, fifty-five individuals selected for the chance to receive fiscal year 2025 diversity visas under the Immigration and Nationality Act, 8 U.S.C. §§ 1151(e), 1153(c)(1), and forty-seven of their derivative beneficiaries sued to compel the Department of State to process their visa applications. They alleged that the Department had either failed to process or unlawfully refused their applications because of a presidential proclamation suspending entry into the United States by individuals from their home countries. The Plaintiffs sought a preliminary injunction, which the Court granted in part and denied in part. The Court ordered the Defendants to make good-faith efforts to process certain Plaintiffs' applications before September 30, 2025, the statutory expiration date for the diversity visas. The Defendants complied with that order and adjudicated nearly all the relevant applications, issuing visas to at least sixty-one of the Plaintiffs. The September 30, 2025, expiration date has since passed.

    The Court now addresses what is left of this case in light of these developments. The Defendants have moved to dismiss the case in its entirety and the Plaintiffs have filed a second motion for injunctive relief. As explained below, the claims on which the Court previously granted

emergency injunctive relief are now moot. And the Plaintiffs' remaining claim is meritless. Accordingly, the Court grants the Defendants' Cross-Motion to Dismiss and denies the Plaintiffs' Motion for Emergency Injunctive Relief.

## BACKGROUND

"The following facts are alleged in the Complaint or drawn from declarations in the record that are not disputed in relevant part, except where otherwise noted." *Postal Police Officers Ass'n v. U.S. Postal Serv.*, 502 F. Supp. 3d 411, 415 (D.D.C. 2020). The background of this case is provided in more detail in the Court's prior Memorandum Opinion, and the Court assumes familiarity with that Opinion. *See Thein v. Trump*, No. 25-cv-2369, 2025 WL 2418402, at *1–3 (D.D.C. Aug. 21, 2025).[1]

The Plaintiffs are nationals of Afghanistan, Burma, Togo, Somalia, or Iran. Compl. ¶ 437, ECF No. 1. Fifty-five of them were selected for the chance to receive fiscal year 2025 diversity visas (DV-2025), and the remaining forty-seven are the selectees' derivative beneficiaries. *Id.* After attending their DV-2025 interviews with consular officials at their respective embassies, eighteen of the Plaintiffs were issued DV-2025 visas, while the other eighty-four Plaintiffs' applications were placed in so-called "administrative processing." Compl. ¶¶ 442–44.

The Plaintiffs sued the Defendants in late July 2025, seeking a writ of mandamus, an injunction, and relief under the Administrative Procedure Act. Compl. at 100–02, ¶¶ A–M. The Complaint alleges that Proclamation 10949,[2] 90 Fed. Reg. 24497 (June 4, 2025), and the Department of State's guidance implementing that Proclamation resulted in the unlawful refusal

---

[1] Mem. Op. 2–6, ECF No. 22.

[2] On December 16, 2025, President Trump issued Proclamation 10998, which amended Proclamation 10949. 90 Fed. Reg. 59717 (Dec. 16, 2025). Neither Party has made a submission regarding the impact of Proclamation 10998, and the Court proceeds on the assumption that it is inconsequential to resolving the pending motions.

to adjudicate some of the Plaintiffs' DV-2025 applications and the unlawful refusal to provide visas to other Plaintiffs. Compl. ¶¶ 503–613.

On July 31, 2025, the Plaintiffs filed a Motion for Preliminary Injunction. ECF No. 11. The Defendants opposed the Plaintiffs' motion and cross-moved for dismissal. ECF No. 16. After a hearing, the Court granted the Plaintiffs' motion in part and denied it in part on August 21, 2025. Order, ECF No. 23. The Court concluded that some of the Plaintiffs' claims were likely barred by the doctrine of consular non-reviewability. *Thein*, 2025 WL 2418402, at *7. But it held that another group of Plaintiffs were likely to succeed on their claim that the Department of State had unlawfully delayed adjudicating their DV-2025 applications. *Id.* at *14. The Court further held that those Plaintiffs were likely to show that the Department of State's implementing guidance for Proclamation 10949 was unlawful. *Id.* at *17. Because these Plaintiffs also met their burden on the remaining preliminary-injunction factors, the Court (1) ordered the Secretary of State to take good-faith efforts to adjudicate the Plaintiffs' applications that were then in administrative processing by September 30, 2025; and (2) preliminarily enjoined the Secretary of State from issuing the Plaintiffs visa-application refusals based on Proclamation 10949 or its implementing guidance. *Id.* at *19.

Following this Court's Order, the Defendants began processing the seventy-three relevant Plaintiffs' applications. According to the Defendants, by September 29, 2025, sixty-one of those Plaintiffs had been issued visas. Status Report at 2, ECF No. 41. One application was refused under 8 U.S.C. § 1182(a)(3)(B), vitiating the applications of that Plaintiff's four derivative beneficiaries. *Id.* And the remaining seven Plaintiffs' applications were at various stages of processing. *Id.*

In the meantime, the Defendants filed a notice of appeal. ECF No. 36. The Plaintiffs later filed a notice of cross-appeal. ECF No. 42. Given these developments and the passage of the

September 30, 2025, DV-2025 expiration date, the Court ordered the Parties to file supplemental briefing addressing (1) whether this case is moot, and (2) whether the Court can dismiss the Complaint as moot or vacate its preliminary injunction order despite the notices of appeal. Min. Order (Oct. 2, 2025). The Parties complied with that order. *See* ECF Nos. 44, 48, 49. And after the statutory deadline, the Plaintiffs filed a second motion seeking emergency injunctive relief. Mot. Emergency Injunctive Relief, ECF No. 45.

There are now two motions ripe for the Court's review: the Defendants' Cross-Motion to Dismiss and the Plaintiffs' Motion for Emergency Injunctive Relief. Both motions are fully briefed. *See* Mot. Dismiss Reply, ECF No. 20; Mot. Dismiss Opp'n, ECF No. 25; Emergency Injunctive Relief Opp'n, ECF No. 46; Emergency Injunctive Relief Reply, ECF No. 47.

## LEGAL STANDARD

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotations omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court must consider four factors "[i]n deciding whether to grant emergency injunctive relief": "(1) whether there is a substantial likelihood that plaintiffs will succeed on the merits of their claims, (2) whether plaintiffs will suffer irreparable injury in the absence of an injunction, (3) the harm to the defendants or other interested parties . . . , and (4) whether an injunction would

4

be in the public interest." *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 13 (D.D.C. 2009).[3]

## DISCUSSION

### A.    Jurisdiction

The Court begins by addressing whether intervening events have undermined its jurisdiction to hear the Plaintiffs' claims. It first discusses the impact of the Parties' appeals, and then it assesses whether the Plaintiffs' claims are now moot.

#### 1.    Appeal

In general, "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *In re Sealed Case*, 77 F.4th 815, 828 n.4 (D.C. Cir. 2023) (quoting *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023)). Yet "an appeal under 28 U.S.C. § 1292(a)(1) from an interlocutory order involving a preliminary injunction does not divest the district court with jurisdiction to proceed with a decision on the merits, absent a stay order issued by the Court of Appeals." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 26 (D.D.C. 2013) (citing *Ex parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156, 162 (1906)); *see also Garner v. United States*, No. 25-5335, 2026 WL 69397, at *2 (D.C. Cir. Jan 8, 2026) (per curiam); Charles Alan Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2962 (3d ed. Sept. 2025 Update) ("An appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other

---

[3] "The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." *Gomez v. Biden*, Nos. 20-cv-1419 et al., 2021 WL 1037866 (D.D.C. Feb. 19, 2021) (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004)). Because the Court ultimately rejects the Plaintiffs' request for injunctive relief under the All Writs Act, it need not decide whether that request is essentially for preliminary injunctive relief subject to the requirements of a traditional injunction.

steps in the litigation while the appeal is pending."). Here, because the Parties' appeals are interlocutory under 28 U.S.C. § 1292(a)(1), the Court retains jurisdiction to proceed "as though no such appeal had been taken." *Ex parte Nat'l Enameling & Stamping Co.*, 201 U.S. at 162.

### 2. Mootness

The next issue is whether intervening events—particularly, the expiration of DV-2025 visas after September 30, 2025—have rendered the Plaintiffs' claims moot. "Article III of the Constitution limits federal courts to deciding 'actual, ongoing controversies,' meaning that courts have no jurisdiction over claims that are moot." *N.S. v. Hughes*, 335 F.R.D. 337, 344 (D.D.C. 2020) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)), *modified on other grounds sub nom. N.S. v. Dixon*, 2020 WL 6701076 (D.D.C. Nov. 13, 2020). "A case is moot if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Pharmachemie B.V. v. Barr Lab'ys, Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002) (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)). In other words, "a case becomes moot only if, assuming the plaintiff prevails, 'it is impossible for a court to grant [her] any effectual relief whatever.'" *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019) (alteration in original) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). For the reasons below, the Court concludes that the Plaintiffs' core claims are moot.

#### a. Visa-Processing Claims

As the Court previously explained, "[s]election for a diversity visa . . . comes with a strict time limit: selectees are 'eligible to receive [the] visa only through the end of the specific fiscal year for which they were selected.'" *Thein*, 2025 WL 2418402, at *1 (quoting 8 U.S.C. § 1154(a)(1)(I)(ii)(II)). Or more colorfully, "when midnight strikes at the end of the fiscal year, those without visas are out of luck." *Goodluck v. Biden*, 104 F.4th 920, 925 (D.C. Cir. 2024)

(quoting *Yung-Kai Lu v. Tillerson*, 292 F. Supp. 3d 276, 282 (D.D.C. 2018)). In a recent case, the D.C. Circuit confirmed that this deadline means that district courts have "no authority to order the State Department to keep processing applications for diversity visas" or to "issu[e] the visas beyond the end of the relevant fiscal year[]." *Id.* at 926.

The Defendants argue that all the Plaintiffs' claims relating to processing of their visa applications are moot. Defs.' Suppl. Br. 2, ECF No. 48. The Court agrees. Counts four, five, six, and seven of the Plaintiffs' Complaint aver that the Department of State's delay in adjudicating the Plaintiffs' DV-2025 applications was unlawful. Compl. ¶¶ 536–37, 559–60, 572, 602. This Court previously concluded that the Plaintiffs were likely to succeed on their claims under 5 U.S.C. § 706(1). *Thein*, 2025 WL 2418402, at *14. Accordingly, the Court ordered the Secretary of State to "undertake good-faith efforts, directly and through his designees, to expeditiously process and adjudicate the Plaintiffs' applications that are currently in administrative processing by September 30, 2025." *Id.* at *19. As discussed above, the Defendants complied with that order, and nearly all the relevant Plaintiffs' applications were adjudicated before September 30, 2025. Because these Plaintiffs have had their visa applications adjudicated, they now "lack a legally cognizable interest in the outcome" of the Complaint's claims of delay. *Almaqrami*, 933 F.3d at 779 (quoting *Chafin*, 568 U.S. at 172); *see also Mehneh v. Rubio*, No. 25-5001, 2026 WL 125973, at *2 (Jan. 16, 2026) ("Because the Department completed administrative processing and issued the visa, we 'cannot grant any effectual relief.'" (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996))). And as for the approximately seven Plaintiffs whose applications remained pending on September 30, 2025, "it is impossible for [this] [C]ourt to grant [them] any effectual relief whatever." *Almaqrami*, 933 F.3d at 779 (quoting *Chafin*, 568 U.S. at 172). That is because this Court lacks authority "to order the State Department to keep processing applications for diversity visas" or to "issu[e] the visas

beyond" September 30, 2025. *Goodluck*, 104 F.4th at 926. Thus, the Plaintiffs' claims alleging that the Defendants unlawfully delayed adjudicating their DV-2025 visas are moot.

Counts two and three of the Plaintiffs' Complaint are also moot. Those counts challenge the Department of State's reliance on Proclamation 10949 and 8 U.S.C. § 1182(f) to suspend adjudication of or deny the Plaintiffs' visa applications. Compl. ¶¶ 522, 528–29. This Court previously concluded that some of the Plaintiffs were likely to succeed on those claims, and it therefore preliminarily enjoined the Department "from issuing visa-application refusals based on 8 U.S.C. § 1182(f), Proclamation 10949, or any guidance instructing consular officers to refuse visas based on Subsection 1182(f)" when adjudicating the Plaintiffs' applications. *Thein*, 2025 WL 2418402, at *19. But these claims are moot for much the same reason as the other claims discussed above: (1) the DV-2025 visas for which the Plaintiffs with pending applications were selected are now expired, and (2) the Court can no longer order adjudication of the Plaintiffs' applications or order issuance of visas. Given these developments, it makes no real-life difference whether some of the Plaintiffs' visa applications were improperly refused or might have been improperly refused if timely processed. Because the visas for which the Plaintiffs were selected have expired, they cannot show that prevailing on these claims will "presently affect [their] rights nor have a more-than-speculative chance of affecting them in the future." *Pharmachemie B.V.*, 276 F.3d at 631 (quoting *Clarke*, 915 F.2d at 701); *see also Institutional S'holder Servs. Inc. v. SEC*, 718 F. Supp. 3d 7, 18 (D.D.C. 2024) ("The Supreme Court has characterized mootness as 'the doctrine of standing set in a time frame[.]'" (quoting *Garden State Broad. Ltd. v. FCC*, 996 F.2d 386, 394 (D.C. Cir. 1993))).

### b. The Plaintiffs' Arguments

The Plaintiffs make several arguments to the contrary, none of which are persuasive. First, the Plaintiffs argue that this Court can use its powers under the All Writs Act, 28 U.S.C. § 1651(a), to extend the visa-expiration dates for Plaintiffs who have been issued visas to give them an opportunity to use those visas if the presidential proclamation suspending entry is lifted. Pls.' Suppl. Br. 2–3, ECF No. 44. Indeed, the Plaintiffs followed up their supplemental brief on mootness with a Motion for Emergency Injunctive Relief requesting that the Court extend those dates, which is discussed below. ECF No. 45. Yet the Plaintiffs do not explain how this relief would be "effectual" for their claims related to visa processing. *See Almaqrami*, 933 F.3d at 779 (quoting *Chafin*, 568 U.S. at 172). Recall that the claims at issue challenged the Defendants' failure to process the Plaintiffs' applications and the use of Proclamation 10949 to suspend processing of or deny the applications. Even assuming that the Court could and did extend the expiration dates of visas that have been issued, that would change nothing. Those Plaintiffs who already received DV-2025 visas got the relief sought for these claims and those who have not obtained DV-2025 visas cannot now receive visas because the statutory deadline has passed. The case cited by the Plaintiffs, *Gomez v. Biden* (*Gomez II*), underscores this point. Nos. 20-cv-1419 et al., 2021 WL 1037866 (D.D.C. Feb. 19, 2021). There, the court extended visa expiration dates pursuant to the All Writs Act to preserve its jurisdiction over challenges by individuals who had been issued visas. *Id.* at *2. But that is entirely unrelated to the claims discussed above, which the Plaintiffs brought to obtain visas in the first place.

Second, the Plaintiffs invoke the doctrine of "capable of repetition but evading review." Pls.' Suppl. Br. 3. "The capable of repetition but evading review exception [to mootness] applies if '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation

or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *J.T. v. District of Columbia*, 983 F.3d 516, 523 (D.C. Cir. 2020) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)). The Plaintiffs have not met their burden to show that "the same parties will engage in litigation over the same issues in the future." *Id.* at 524 (quoting *Pharmachemie B.V.*, 276 F.3d at 633). As the Court previously noted, the Plaintiffs "literally won the lottery; they were randomly selected from millions of people around the world hoping for one of a handful of visas that could give them a chance to immigrate to the United States." *Thein*, 2025 WL 2418402, at *18. For that reason, it is exceedingly unlikely that any of the Plaintiffs will again win the diversity-visa lottery and will again be subject to allegedly wrongful delays or unlawful refusals. This doctrine, then, does not except this case from mootness.[4]

Third, the Plaintiffs invoke another exception to mootness, the so-called "inherently-transitory" exception. Pls.' Suppl. Reply 7, ECF No. 49. But this exception is "unique to the class action context." *Luna Gutierrez v. Noem*, No. 25-cv-1766, 2025 WL 3496390, at *3 (D.D.C. Dec. 5, 2025). The Plaintiffs here have not sought to certify a class under Federal Rule of Civil Procedure 23, so this exception is inapplicable.

Fourth, the Plaintiffs argue that it would be improper to conclude that these claims are moot because it would foreclose them from obtaining attorney fees. Pls.' Suppl. Br. 4. But the Supreme Court has explained that an "interest in attorney's fees is . . . insufficient to create an Article III

---

[4] Similarly unpersuasive is the Plaintiffs' argument that some Plaintiffs may "pursue other paths to visas to the US" and wish to avoid "misapplication" of 8 U.S.C. § 1182(f). Pls.' Suppl. Br. 5. Even assuming the doubtful premise that future application of Subsection 1182(f) in a different context could keep the Plaintiffs' claims here alive, the Plaintiffs' one-sentence assertion of other potential paths to visas is insufficient. *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without any description of concrete plans . . . do not support a finding of the 'actual or imminent' injury that our cases require.").

case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990); *see also District of Columbia v. Jeppsen ex rel. Jeppsen*, 514 F.3d 1287, 1289 (D.C. Cir. 2008) ("[W]hen intervening events have mooted the plaintiff's underlying claim, the plaintiff's continuing interest in attorneys' fees does not support her continued standing to pursue the underlying claim.").[5]

Fifth and finally, the Plaintiffs argue that the potential for declaratory relief saves these claims from mootness. Pls.' Suppl. Reply 7. The Court disagrees. "'[G]enerally, if a case is moot, a request for declaratory judgment will not resuscitate the lawsuit, unless an exception to the mootness doctrine applies.' . . . In particular, '[w]here an intervening event renders the underlying case moot, a declaratory judgment . . . affords the plaintiff[] no relief whatsoever.'" *Noble v. Nat'l Ass'n of Letter Carriers*, 285 F. Supp. 3d 128, 135 (D.D.C. 2018) (first quoting *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 226 (D.D.C. 2017); and then quoting *NBC–USA Hous., Inc., Twenty-Six v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012)).

\*   \*   \*

In sum, the Plaintiffs' claims related to the processing of their DV-2025 applications are moot. But the Plaintiffs have another claim that is not moot: their challenge to Proclamation 10949. *See* Defs.' Suppl. Br. 2; Pls.' Suppl. Reply 1. Because Proclamation 10949 continues to restrict the entry of many of the Plaintiffs into the United States, they retain a live interest in this challenge

---

[5] The Plaintiffs cite three out-of-Circuit cases in support of the proposition that the possibility of attorney fees is enough to save a case from mootness. Pls.' Suppl. Br. 4–5 (first citing *Nw. Env't Advocs. v. City of Portland*, 56 F.3d 979 (9th Cir. 1995); then citing *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141 (9th Cir. 2000); and then citing *Ezell v. Mobile Hous. Bd.*, 709 F.2d 1376 (11th Cir. 1983)). Even if the Plaintiffs read these cases correctly, the Court is foreclosed from following them by Supreme Court and D.C. Circuit precedent.

and this Court could grant effectual relief. The Court turns next to the Defendants' motion to dismiss that claim.

### B. Cross-Motion to Dismiss

The core of the Plaintiffs' challenge to Proclamation 10949 is an argument that its underlying statutory grant of authority, 8 U.S.C. § 1182(f), is unconstitutional under the non-delegation doctrine and the separation of powers. Mot. Dismiss Reply at 13–14. The Court previously concluded that the Plaintiffs were unlikely to succeed on this "borderline frivolous [claim] in light of *Trump v. Hawaii*, 585 U.S. 667 (2018)." *Thein*, 2025 WL 2418402, at *14 n.14. The Court now confirms that conclusion. Subsection 1182(f) is not unconstitutional under either the non-delegation doctrine or the separation of powers.

Under the non-delegation doctrine, congressional delegations to the Executive must "set out an 'intelligible principle' to guide what [Congress] has given the agency to do." *FCC v. Consumers' Rsch.*, 606 U.S. 656, 673 (2025) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). The question is "whether Congress has made clear both 'the general policy' that the agency must pursue and 'the boundaries of [its] delegated authority.'" *Id.* (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)). Put differently, courts ask "if Congress has provided sufficient standards to enable both 'the courts and the public [to] ascertain whether the agency' has followed the law." *Id.* (quoting *OPP Cotton Mills, Inc. v. Adm'r of Wage & Hour Div., Dep't of Lab.*, 312 U.S. 126, 144 (1941)).

The provision at issue here is 8 U.S.C. § 1182(f). That subsection provides, as relevant here:

> Whenever the President finds that the entry of any aliens or any class of aliens into the United States would be detrimental to the interest of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry

> of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f). Although this provision grants broad authority to the President, the Supreme Court has identified that it has "textual limits." *Hawaii*, 585 U.S. at 687. "Those include the requirement that the President make a 'find[ing]'; identify a 'class of aliens' whose entry is restricted; and 'suspend' such entry for a fixed period of time or until resolution of a triggering condition." *Gomez v. Trump* (*Gomez I*), 485 F. Supp. 3d 145, 187 (D.D.C. 2020) (citing *Hawaii*, 585 U.S. at 687–88). As another Court in this District has observed, "standards such as 'detrimental to the interests of the United States' and as 'he may deem to be appropriate' convey an expansive grant of power, but they are no more capacious than the broad standards deemed sufficiently intelligible by the Supreme Court in all but two of its cases." *Id.*

What is the Plaintiffs' response? That this Court should disregard *Trump v. Hawaii* because it was wrongly decided. Mot. Hr'g Tr. 20:4–12, ECF No. 24 ("Plaintiffs would submit that they were wrong in *Trump versus Hawaii*."); *id.* 21:21–24 ("COURT: [I]f the Supreme Court has weighed in on a question, you think I can just ignore their holding because you think they're wrong? [PLAINTIFFS' COUNSEL]: Yes, your Honor."). For obvious reasons, this Court declines the invitation to ignore binding Supreme Court precedent. This Court joins other courts in this District in holding that Subsection 1182(f) does not violate the non-delegation doctrine. *See, e.g.*, *Gomez I*, 485 F. Supp. at 187; *Ariani v. Rubio*, No. 25-cv-349, 2025 WL 3653503, at *6 (D.D.C. Dec. 17, 2025).[6]

---

[6] The Plaintiffs appear to argue that Proclamation 10949 also violates the statutory limits in 8 U.S.C. § 1182(f). Mot. Dismiss Reply 15–16. But their challenge is hard to make out. They seem to contend that the Proclamation has improper domestic economic purposes, has exceptions that are "imaginory [sic]," and relies on "flimsy" national-security justifications." *Id.* This argument is also foreclosed by *Trump v. Hawaii*, which held that a proclamation materially identical to Proclamation 10949 was consistent with 8 U.S.C. § 1182(f). *Trump v. Hawaii*, 585 U.S. 667,

13

The Plaintiffs also more generally invoke separation of powers principles. But to the extent that the separation of powers has force in this context beyond the non-delegation doctrine, the same result follows. The principal concern of the separation of powers is "the danger of one branch's aggrandizing its power at the expense of another branch." *Freytag v. Comm'r*, 501 U.S. 868, 878 (1991). Here, that danger is minimal given that the President's ability to issue proclamations such as Proclamation 10949 is "authorized by statute." *See Whatley v. District of Columbia*, 447 F.3d 814, 821 (D.C. Cir. 2006); *cf. Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring) ("When the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum[.]"). The Plaintiffs provide no persuasive reason why the separation of powers, beyond the non-delegation doctrine, prohibits Congress from granting the President the authority conferred by 8 U.S.C. § 1182(f). The Complaint's challenge to Proclamation 10949 must be dismissed.

### C. Motion for Emergency Injunctive Relief

Finally, the Court addresses the Plaintiffs' Motion for Emergency Injunctive Relief. In this motion, the Plaintiffs argue that "the Court should invoke the All Writs Act's broad authority to relieve Plaintiffs from the expiration of DV-2025 visas." Pls.' Mem. Support 6, ECF No. 45-1. According to the Plaintiffs, this relief is appropriate because it would preserve the jurisdiction of this Court and the D.C. Circuit to decide the Plaintiffs' claims on the merits. *Id.* This Court has now addressed the Plaintiffs' non-moot claim on its merits. Thus, assuming without deciding that the All Writs Act authorizes the Court to grant the Plaintiffs' requested relief, that relief is now unnecessary. The Court denies the Plaintiffs' motion.

---

686–88 (2018); *see also Ariani v. Rubio*, No. 25-cv-349, 2025 WL 3653503, at *6 (D.D.C. Dec. 17, 2025) (rejecting statutory challenge to Proclamation 10949).

## CONCLUSION

For the foregoing reasons, the Court grants the Defendants' Cross-Motion to Dismiss, ECF No. 16, and denies the Plaintiffs' Motion for Emergency Injunctive Relief, ECF No. 45.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date: January 23, 2026